MARY LOU HOWELL V. THE STATE

No. 17814. Delivered December 11, 1935.

The opinion states the case.

*Frank Judkins,* of Eastland, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for robbery; punishment, twenty years in the penitentiary.

We have concluded that the only question necessary to be discussed is the sufficiency of the testimony, and in order that the reasons for our conclusion may appear we shall state much of the material testimony.

Mr. Threet was shot by Doggett on August 15, 1934, at a tank on Threet's ranch in the edge of Callahan County, some six miles west and three miles south of Cisco. After the shooting Doggett took from Threet certain money. Those present were appellant, Doggett, Threet and Van Cleve, the latter being used as a State witness, and testifying that the

night before the alleged robbery Doggett had told witness that appellant was going to take an old man out in the country the next morning, that "We would go out there the next morning and rob him," that he and Doggett did go together the next morning out to Threet's ranch where they found Threet and appellant sitting on a pallet near a tank, that witness and Doggett, each having a rifle, crept close to said parties, then emerged from some trees with guns presented, and told them to throw up their hands; that appellant put up her hands, but Threet,—refusing,—was shot by Doggett, who then took from Threet's prostrate body said money. Threet died a few days later from the effects of the shooting. Witness testified further that Doggett then tied Threet and appellant, and that the two of them went away leaving both tied.

On cross-examination this witness said that appellant did no shooting, and got none of the money. He saw her do nothing to assist in the robbery. He and Doggett left in Doggett's car, and he saw nothing further of appellant.

The serious question here presented is what testimony is there in this record which tends to connect this woman with the robbery, or supports any theory that there was a conspiracy to rob Threet to which she was a party. We summarize the testimony shedding light on her connection with the transaction.

She apparently spent the night of the 14th of August with Doggett in a tourist camp at Cisco. Doggett and appellant were seen the next morning not far from Cisco on the highway, he in his car going east,—she on foot going west, the inference being that she had just gotten out of Doggett's car. Witnesses later saw her in Threet's car going west on the highway, and then going south toward Threet's ranch. At the tank where the wounded body of Threet was found that afternoon, tracks of a woman's shoe were observed, into which the shoe of appellant was fitted, and also on one of her shoes, when taken in custody, was found mud like that at said tank. That same afternoon appellant was picked up on the highway west of Cisco by a witness who brought her to Cisco, and to whom she told a story,—in explanation of her presence at the place where she was picked up,—not consistent with her being at the place of the alleged robbery. If there be any other corroborative facts in this record, they have escaped us.

Unless the fact that appellant spent the night at the tourist camp with Doggett the night before the alleged robbery; that they were in close contact the next morning on the Cisco

highway; that she went with Threet to the scene of the alleged robbery, and was there during same, and told a story when picked up on the highway that afternoon which was not in harmony with her presence at such robbery,—is sufficient, then we respectfully submit that these facts do not show her a principal offender, and the case must be reversed.

Reviewing what accomplice Van Cleve testified as showing appellant to be a party to the robbery, we note that he first states what Doggett told him the night befor, i.e. that Mary Lou was taking an old man out in the country the next morning, and "We would go out there and rob him." He also swore Doggett told him that he and Mary Lou were going to stay at a tourist camp that night. Further he swore that Doggett came the next morning and got him, and took him back to Doggett's house where they ate breakfast and stayed thirty-five or forty minutes, and then went out on the Abilene highway, turned south and went a mile or two, then went back to the highway, and on out further, again turned south and met some one near a gate, which they went through. He testified: "I did not see any other car there at any place." After coming upon the ranch, however, he said they left Doggett's car and observed a car down in the pasture, and went toward it, got into a ditch and crawled up same, and finally came to a point where they tied some handkerchiefs over their faces, and Doggett said "Let's go," and they jumped up on the bank, and Doggett told them, referring to Threet and appellant, to throw up their hands, and Mary Lou threw up hers. He said Threet did not throw up his, and Doggett told Mary Lou to lie down; told her to turn over on her face. We quote at some length: "Mr. Threet said he would not do it. He said if he did'nt do it he would shoot him or kill him. He still didn't do it. He hesitated a few minutes and then he shot and the old man lay back on the pallet. He was sitting up. * * * He tied Mr. Threet up. * * * He tied Mary Lou at that time. He did not tie her very bad. He just wrapped it around tight. * * * I left about the time he got through tying Mary Lou. * * * I went out there with Doggett for the purpose of robbing this man. * * * Mary Lou did not do any shooting. It was just a few minutes after he said 'Throw up your hands,' before he shot the man; maybe not longer than a minute or two. When he shot, the man lay back. Doggett did not then run up. He first told him to turn over. Mary Lou was already over. She threw up her hands. He told her to lie down and turn over. We had our guns on her too. * * * Doggett

tied them both. He left them both tied. He went off with the money. * * * I do not know whether Mary Lou said anything or not. Doggett told them to turn over and she turned over. * * * She kept saying 'Dad turn over' or something like that. * * * She did not try to rob him. Q. Did she do anything at all towards robbing him? A. No, sir; just one time, she touched him."

The court submitted two propositions to the jury, one or the other, or both of which would have to be sustained by proof, else a conclusion of guilt would be unwarranted. First, if Mary Lou was present at the time of the commission of the alleged robbery, did she do or say anything in aid or encouragement of Doggett who actually shot and robbed Threet? We fail to find support in the record for any affirmative answer to the above proposition. The accomplice was the only eye-witness, and he did not state anything which she said or did, which would support such conclusion. Second, was the robbery committed in pursuance of a common intent so to do, and in pursuance of a formed design in which appellant's mind united and concurred with the minds of the other parties so engaged? We find nothing supporting any affirmative answer to this proposition, save the fact that appellant was out in Threet's pasture and on a pallet with a man with whom she had gone out there that day, after a night spent in a tourist camp with another man who had followed them out and came upon them in said situation, and who, failing to get money from them without force, shot and robbed Threet, and left both Threet and the woman tied while he and his confessed confederate drove away in possession of all the money lost and the guns used.

It is unfortunate that men and women with wrong intent go out to secret places, but a woman who would spend a night in a tourist camp with a man not her husband might readily go out to a place with another man not so related. Such conduct would not impute intent to rob in either instance, and we are confronted with a state of facts which, while strongly supporting a conclusion of easy virtue, leaves us with little upon which to base a legal conclusion of guilt as a principal in a robbery case.

True, the accomplice says in one place that she was helping them to rob Threet, but when his testimony is scrutinized and sifted we note that he fails to state a single act or statement of the woman indicating that she purposed to rob Threet. Said accomplice had never met the woman or talked to her

prior to said date. He relates a statement of Doggett, but it goes no further than to say that appellant was going to take an old man out in the country. Doggett then further proposed to the accomplice witness that "We will go out there and rob him."

We have carefully gone over this testimony from all angles, both with and without the testimony of Van Cleve. There is no question but that Mary Lou was present at the time of the commission of the alleged robbery, but the testimony of Van Cleve not only fails to show anything said or done by her in aid or encouragement of Doggett who actually committed the robbery, but on the contrary, as narrated, her conduct and actions so set out lend no support to the proposition that she was acting with Doggett in such robbery. We have scanned the evidence closely to see if there be facts supporting the proposition that this robbery was committed in pursuance of a common intent or formed design in which the mind of Mary Lou Howell united and concurred with the minds of the other parties but fail to find anything of material weight or value supporting the proposition stated. Admitting that the unfortunate woman spent the night in a tourist camp with Doggett, and that she confided to Doggett that she was going out the next day with Threet to his pasture, this would not carry with it any sort of agreement on her part to act with Doggett; or with Doggett and any other man with whom Doggett might enter into an agreement that they would follow Threet and the woman out and probably catch them in a compromising position, such as many men would gladly pay money to have kept concealed rather than have it told or known about them that they had been so found. The fact that when Doggett and Van Cleve did follow appellant and Threet to the place of their assignation, and coming upon them demanded that they both throw up their hands, and that Threet refusing so to do was shot by Doggett and then robbed, no act or word of the woman being shown, certainly would not suffice to justify the conclusion that the robbery committeed was the result of a previously formed design or conspiracy to which the woman was a party. We are doubtful if there was enough testimony before this jury to justify their verdict, and are satisfied that there is not sufficient testimony to corroborate the accomplice Van Cleve.

The judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*